## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JONATHAN ROSEN,

Plaintiff,

v.

PROTECTIVE LIFE INSURANCE
COMPANY, AMERICAN
GUARANTEE AND LIABILITY
INSURANCE COMPANY, ZURICH
AMERICAN INSURANCE
COMPANY, and INSURANCE
SPECIALITIES SERVICES, INC.,

Defendants.

1:09-cv-03620-WSD

## OPINION AND ORDER

This matter is before the Court on Plaintiff Jonathan Rosen's ("Rosen")

Motion to Disqualify C. Bradford Marsh and the Law Firm of Swift, Currie,

McGee & Hiers LLP ("Swift Currie") ("Motion to Disqualify") [12]; Protective

Life Insurance Company's ("Protective") Motion to Dismiss [18]; Rosen's Motion

for Leave to File Sur-Reply to Motion to Disqualify [36]; Protective's Motion to

Stay Discovery [34]; and Protective's Motion for Protective Order [56].

# I.    BACKGROUND

Rosen provides long-term financial planning advice to individuals.  From 2002 to 2008, he was an agent of Protective, pursuant to an independent marketing agreement (the "Agency Agreement").  (Am. Compl. ¶ 46.)  As an agent, Rosen was authorized to sell Protective insurance products.  (Id. at ¶ 47.)  As a condition of the Agency Agreement, Rosen was required to have Errors and Omissions ("E&O") insurance.  (Id. at ¶ 48.)

Protective offers E&O insurance to its agents through the Protective E&O Program (the "Program").  (Id. at ¶ 18-24.)  Under the Program, a Protective agent can apply to receive a Zurich American Insurance Company ("Zurich") sponsored E&O insurance policy underwritten by American Guarantee Insurance Company ("American Guarantee"), a wholly owned-subsidiary of Zurich.   (Id. at ¶¶ 1, 18-24.)  This policy was marketed and administrated by Insurance Specialties Services, Inc. ("ISSI").  (Id. at ¶¶ 33-34.)  Protective agents are not obligated to participate in the Program and Mr. Rosen could have elected to use a different E&O insurance provider.  From 2003 to 2008, Rosen purchased his E&O policy under the Program (the "Policy").  (Id. ¶ 1.)

Protective was listed as an "Additional Insured" under Rosen's Policy.  As an "Additional Insured," Protective was "subject to all of the terms, conditions,

limitations and exclusions of the Policy to the same extent as [Rosen] and [was] not entitled to any right greater than" Rosen.  (Resp. to Mot. to Dismiss, Ex. A, p. 2, § I.B.3.)[1]  Protective also had certain obligations as an "Additional Insured." Protective was required to keep a roster of its agents' names.  (Id. at 2, § II.B.) Protective was also obligated to "act on behalf of the 'Insureds' and 'Additional Insureds' for all purposes, including but not limited to the payment or return of premium receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of termination or nonrenewal."  (Id. at 11, § VII.I.)

In 2006, a lawsuit was initiated against Rosen (the "Griffin Claim").  (Am. Compl. ¶ 53.)  Rosen notified American Guarantee of the claim and Zurich took the lead role in the defense of the claim.  (Id. at ¶¶ 54-66.)  Rosen alleges that Zurich's claims agents determined the value of the Griffin Claim to be no more

---

[1]  Rosen attaches a copy of the Policy as an exhibit to its Response.  When ruling on a motion to dismiss, the court limits its consideration to the pleadings, documents attached thereto, or documents incorporated by reference.  See GSW, Inc. v. Long County, GA, 999 F.2d 1508, 1510 (11th Cir. 1993).  A document is incorporated by reference when the complaint refers to the document, the document is central to plaintiff's claim, and no party questions the authenticity of the document.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2nd Cir. 2002); accord Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).  The Amended Complaint refers to the Policy, it is central to Rosen's claims, and Protective does not challenge the authenticity of the Policy. The Court finds that it has been incorporated by reference into the Amended Complaint.

than $150,000.00, but that Zurich settled the matter for $600,000.00.  (Id. at ¶¶ 61, 64.)

Rosen believed that Zurich's handling of the action was deficient, substandard, and placed Zurich's interests above his own.  (Id. at ¶ 71.)  Rosen sued American Guarantee, asserting it handled the Griffin Claim in bad faith (the "Bad Faith Action").  (Id. at ¶ 74.)[2]  American Guarantee failed to file an answer and was held in default.  (Id. at ¶ 77-79.)  Prior to the proceeding to determine the amount of a default judgment, Rosen and American Guarantee, with Zurich participating, entered into settlement negotiations.  (Id. at ¶ 82-83.)

During these negotiations, Mr. Rosen was represented by Kevin Bahr and American Guarantee was represented by Brad Marsh of Swift, Currie, McGee & Heirs LLP ("Swift Currie").  Rosen alleges that Zurich, and Mr. Marsh on Zurich's behalf, controlled the negotiations.  (Id. at ¶¶ 83-85.)  On December 22, 2007, the parties agreed in principle to the terms of a settlement.  (Id. at ¶ 86.)  Protective was not a party to this lawsuit, was not involved in the settlement negotiations, and was not a party to the ultimate Settlement Agreement.  (Id. at 53-82.)

On or about this time, Zurich created a loss run for the Griffin claim, apportioning certain costs, expenses and payments made by Zurich or American

---

[2]  Zurich was not a party to this action.

Guarantee purportedly for and on behalf of Mr. Rosen (the "Rosen Loss Run").
(Id. at 104.)  A loss run generally reflects defense and indemnity costs paid by the
insurer on behalf of an insured or an aggregate number of insureds.  (Id. at ¶ 102.)
Zurich allegedly informed ISSI and Protective that there would be a substantial
increase in the premiums charged to Protective's agents under the Program, in part
because of the Rosen Loss Run.  (Id. at ¶ 111.)  Rosen alleges Protective
understood it could ameliorate the threatened increase in premiums if Rosen was
terminated, and Rosen claims Protective, in response to these alleged threats, thus
decided to terminate the Agency Agreement with Rosen.  (Id. at ¶¶ 112-116, 125-
26, 262.)[3]  On January 4, 2008, Rosen claims Protective advised ISSI and Zurich of
its decision to terminate Rosen as an agent.  (Id at ¶ 114, 125-26.)  Rosen alleges
that after Protective informed ISSI and Zurich of its decision to terminate Rosen,
Zurich reduced the proposed Protective E&O premium increase by approximately
75%.  (Id. at ¶ 115.)

On January 7, 2008, Mr. Marsh, American Guarantee's attorney, prepared a
proposed settlement agreement and transmitted it to Rosen's counsel.  (Id. at 87.)
Rosen's counsel, Mr. Bahr, revised the settlement agreement and sent it back to

---

[3]  Rosen further alleges that Protective attempted to conceal that the threat from
Zurich was the reason for its termination decision by informing Rosen's counsel on
April 25, 2008, that Rosen was terminated for lack of production.  (Id. at ¶ 315.)

American Guarantee and Zurich.  (Id. at ¶ 88-89.)  The new draft contained a provision that "made it clear that American Guarantee and Zurich could not use the bad faith action, including the events that gave rise to the bad faith action, to Mr. Rosen's detriment."  (Id.)

Mr. Marsh forwarded the agreement, as revised by Mr. Bahr, to his clients. (Id. at ¶ 90.)  Rosen alleges that as part of the consideration of the settlement, Zurich and American Guarantee understood that the claim Rosen asserted in the Bad Faith Action and the fact the action was filed could not be used against Rosen. (Id. at ¶ 92.)[4]

On or about January 21, 2008, Mr. Marsh "communicated that his clients agreed to the settlement."  (Id. at ¶ 93.)  On February 4, 2008, American Guarantee executed the Settlement Agreement.  (Id. at ¶ 94.)  The Settlement Agreement contained the provision prohibiting the use of the Bad Faith Action to Rosen's detriment.

On February 26, 2008, ISSI sent to Rosen a renewal invoice for his E&O insurance with a renewal due date of March 24, 2008.  (Id. at ¶ 128, Compl. Ex. A.)[5]  A day later, on February 27, 2008, Protective sent Rosen a notice terminating

---

[4]  Protective and ISSI were not informed of this provision.  (Am. Compl. ¶ 123.)
[5]  ISSI allegedly sent this invoice despite knowing that Protective had decided to terminate Rosen as an agent.  (Id. at ¶ 111.)  Rosen alleges that this invoice was

his agency with a retroactive termination date of February 8, 2008.  (Id. at ¶ 127, 315.)[6]  Prior to receiving the February 27, 2008, termination notice from Protective, Rosen paid the February 26, 2008, invoice to renew his E&O coverage.  (Id. at ¶¶ 134, 141.)  As a result of the invoice payment, ISSI issued to Rosen a Certificate of Insurance evidencing his E&O coverage was in place.  (Id. at ¶ 135.)

After Rosen was terminated as a Protective agent, he was not eligible to participate in the Program, and, on or before March 19, 2008, "Rosen received notice that he was no longer insured under the Protective program."  (Id. at ¶¶ 165-168, 217-219.)  Rosen alleges that his retroactive termination as an agent had the effect of also retroactively terminating his insurance under the Policy.  Rosen claims his premium payment was not automatically refunded, but with Protective's help his premium payment was returned.  (Id. at ¶ 204.)

Rosen, at the time of his termination by Protective was also an agent of Old Mutual Insurance, which has an E&O coverage program similar to that offered by Protective (the "Old Mutual Program").  (Id. at ¶ 165.)  The Old Mutual Program is also underwritten by Zurich and administered by ISSI.  (Id. at ¶¶ 162, 164.)  Rosen sought to enroll in the Old Mutual Program.  After applying for E&O coverage

likely sent because Protective failed to update its agent roster as it was required to do under the Policy.  (Id. at ¶¶ 176-87.)

[6]  Rosen alleges that Protective informed the Georgia Insurance Commissioner that Rosen's termination was effective February 14, 2008.  (Id. at ¶ 157.)

under the Old Mutual Program, on March 19, 2008, Timothy Rasool, a Zurich

employee, informed ISSI that Zurich would not allow Rosen to participate in the

Old Mutual Program "in light of the fact that we had problems with Mr. Rosen

while he was enrolled in the Protective [Program]."  (Id. at ¶¶ 166-169, Ex. C.)[7]

Rosen filed this suit against Zurich, American Guarantee, ISSI, and

Protective, in which he contends that the Defendants were engaged in a wide-

ranging scheme to blackball him from the domestic insurance market, steal his

$781 insurance premium, mislead him into believing he was insured by American

Guarantee, and retaliate against him for filing the Bad Faith Action.  The action

was filed on November 23, 2009, in the Superior Court of DeKalb County,

Georgia.[8]  The Complaint, as amended on January 4, 2010, asserts claims against

Protective for fraud in the inducement to renew enrollment in the Program (Count

II), violations of Georgia's RICO Act (Count IV), conspiracy to violate Georgia's

RICO Act (Count V), negligence (Count VII), negligence per se (Count VIII), as

_____

[7]  Rosen alleges that once he realized that he was not covered under the Program, he was forced to suspend his business.  (Id. at ¶ 212.)  Rosen alleges that he also was forced to obtain a surplus insurance policy at significant expense.  (Id. at ¶ 222.)

[8]  Prior to filing this suit, Rosen had filed suit against only American Guarantee in the Superior Court of DeKalb County, Georgia based on these same events.  In August 2009, this suit was dismissed without prejudice after Rosen's lead attorney in that action unexpectedly died in an accident.  Mr. Marsh represented American Guarantee in that action and Rosen never raised the issue of whether Mr. Marsh should be disqualified based on his participation in the settlement negotiations.

well as for attorneys' fees and punitive damages (Counts IX and X).[9]  Defendants

removed the action to this Court.[10]  On January 19, 2010, Protective filed its

Motion to Dismiss.[11]

Zurich and American Guarantee are represented in this action by Brandon

Marsh.  On January 12, 2010, Rosen moved to disqualify Mr. Marsh and his firm

on the basis that their involvement in the Bad Faith Action and the subsequent

settlement negotiations make them necessary witnesses in this litigation.  Zurich

and American Guarantee contend that the information Mr. Marsh and his firm

possess is available from alternative sources and disqualification of Mr. Marsh and

his firm is not required.

## II.    MOTION TO DISMISS

A.    <u>Legal Standard</u>

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to

dismiss the Complaint for failure to state a claim upon which relief can be granted.

---

[9]  Rosen has agreed to dismiss the following claims against Protective: fraud in the inducement to enter into the settlement agreement (Count I); fraud in the loss run and bad faith penalties (Count III); and breach of the settlement agreement (Count VI).

[10]  Zurich and American Guarantee deny many of Rosen's allegations or state that they lack knowledge to deny or admit many of Rosen's allegations regarding the negotiation of the Settlement Agreement.

[11]  Protective also filed a Motion to Stay Discovery and a Motion for a Protective Order to avoid having to respond to any discovery until the Motion to Dismiss is decided.

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled. Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).  In considering a motion to dismiss, the court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and considers the allegations in the complaint in the light most favorable to the plaintiff.  Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007). Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).[12]  To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely

_____

[12] The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Twombly, 127 S. Ct. at 1968 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Court decided that "this famous observation has earned its retirement."  Id. at 1969.

consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (citing Twombly, 550 U.S. at 557).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).[13]

The Court first notes the shotgun approach that Rosen has employed in asserting claims against Protective.  The "allege a laundry list of claims" approach is disfavored – strongly – in our Circuit because it depletes precious judicial resources and obscures the viable issues to be litigated.  See Magluta v. Samples, 256 F. 3d 1282, 1284 (11th Cir. 2001) (finding a complaint is a "quintessential 'shotgun' pleading" where the "complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of

---

[13] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 127 S. Ct. at 1965.

the defendants could not have participated in every act complained of."); see also
Strategic Income Fund, LLC v. Spear, Leeds & Kellog Corp., 305 F. 3d 1293,
1295 (11th Cir. 2002) (the "typical shotgun complaint contains several counts,
each one incorporating by reference the allegations of its predecessors, leading to a
situation where most of the counts (i.e., all but the first) contain irrelevant factual
allegations and legal conclusions.").  Because this case needs to be focused, the
Court chooses to consider the shotgun claims asserted against Protective.

      B.    Count II: Fraud In the Inducement To Renew Enrollment in the
             Protective E&O Program

      Rosen alleges that Protective fraudulently induced him to renew his
enrollment in the Program despite knowing that Rosen was not eligible for
coverage as a result of the termination of his agency relationship with Protective.
Under Georgia law, fraud requires a plaintiff to prove five elements: (1) a false
representation by the defendant; (2) scienter; (3) intention to induce reliance by the
plaintiff; (4) justifiable reliance by the plaintiff; and (5) damages.  J.E. Black
Constr. Co., Inc. v. Ferguson Enters., Inc., 284 Ga. App. 345, 346 (2007).  Federal
Rule of Civil Procedure 9(b) sets specific requirements for alleging fraud.  Rule
9(b) requires: "In all averments of fraud or mistake, the circumstances constituting
fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  This
"heightened pleading requirement imparts a note of seriousness and encourages a

greater degree of pre-institution investigation by the plaintiff."  5 A Charles Alan

Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1296, at 31 (3d. ed.

2004).  Rule 9(b) therefore requires a plaintiff to plead "such matters as the time,

place and contents of false representations, as well as the identity of the person

making the misrepresentation and what was obtained or given up thereby.

[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive

are not sufficient to satisfy the rule."  <u>Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539,

549-50 (8th Cir. 1997) (dismissing complaint because plaintiffs' allegation of fraud

"is simply not particularized") (quotations and citations omitted).

Count II fails for particularity.  Rosen's pleading strategy in the Amended

Complaint is to indiscriminately incorporate every previous allegation.  This

strategy is employed in Count II.  The result is that Count II does not specify the

conduct in which each Defendant engaged, and Rosen thus does not specifically

allege the misrepresentations purportedly made by Protective to Rosen, where they

were made, who made them, and how they were false.  Rosen simply collectively

alleges that "Defendants" engaged in the fraudulent activity.  This failure of

particularity is evidenced in Paragraph 235 of the Amended Complaint when, after

indiscriminately incorporating all of the previous allegations, Rosen generally

alleges that "Defendants made a number of material misrepresentations to Mr.

Rosen."  Rosen then states four alleged misrepresentations without attribution or context.  These types of broad, unspecific claims are insufficient under Rule 9(b) to allege fraud against Protective.  See WESI, LLC v. Compass Environmental, Inc., 509 F.Supp.2d 1353, 1358 (N.D. Ga. 2007).

Rosen argues in his Response to the Motion to Dismiss ("Response") that he satisfied Rule 9's specificity requirement, when he alleges that "on February 26, 2008, ISSI, *at the direction of Protective*, mailed Mr. Rosen an invoice directing him" to pay the E & O insurance premium for that year.  (Resp. 9 (citing Am. Compl. ¶ 310) (emphasis added).)[14]  Paragraph 310 of the Amended Complaint, which is part of Rosen's RICO claim (Count V), was not incorporated in Count II because it was alleged after Count II was asserted.  Even if it was incorporated, it does not state that Protective directed ISSI to transmit the renewal invoice. Paragraph 310 states, "[t]he invoices received by Mr. Rosen from ISSI for policy EOC-3750471 each bore in capital letters the following statement: 'PLEASE PAY PROMPTLY TO AVOID A LAPSE IN COVERAGE.'"  (Am. Compl. ¶ 310.) This paragraph does not relate to any alleged direction from Protective to ISSI.

---

[14]   Rosen alleges that this statement was false because it falsely represented to Mr. Rosen that he had insurance coverage which could lapse and that he was eligible for insurance should he pay the Premium.  Rosen further alleges that he relied on this false statement to his detriment.  (Am. Compl. ¶ 238.)

Paragraph 267 of the Amended Complaint further contradicts Rosen's contention that Protective directed that the renewal notice be sent to Rosen. Rosen simply claims in that paragraph: "Mr. Rosen received a renewal notice sent on behalf of Zurich and/or its subsidiaries by ISSI." (See Am. Compl. ¶ 267.) Rosen does not allege that Protective is a subsidiary of Zurich. (See Am. Compl. ¶ 1.) To the extent that Rosen contends – if he can in good faith do so – that ISSI was acting as Protective's agent when it sent the February Invoice, he did not adequately allege this agency relationship. See Kolbeck v. LIT Am., Inc., 923 F. Supp. 557, 569 (S.D.N.Y. 1996) (finding that agency relationship for conspiracy claim must be pled in accordance with Rule 9(b)). Since Rosen has failed to allege that Protective played any part in sending the February renewal invoice, Plaintiff has failed to allege any misrepresentation by Protective. Protective's Motion to Dismiss Court II is required to be granted.

C.      Count IV: Georgia's RICO Act

Rosen alleges that Protective violated Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") Act. The Act was passed by the state legislature because of "a severe problem posed by the increasing sophistication of various criminal" elements and the increasing extent to which the state and its citizens were being harmed as a result of the activities of these elements. O.C.G.A. § 16-

14-2(a).[15]  Under the Act, "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money."  <u>Aon Risk Services, Inc. of Georgia v. Comm. & Military Systems</u>, 270 Ga. App. 510, 516 (2004).  Under the Georgia RICO statute, a "pattern of racketeering activity" consists of the commission of two or more interrelated predicate acts indictable under certain categories of state and federal laws.  <u>See Tom's Amusement Co., Inc. v. Total Vending Services</u>, 243 Ga. App. 294, 299 (2000), O.C.G.A. § 16-14-3(8), (9).  For any racketeering claim, there must be a pattern.  Two acts associated with the same transaction do not convert the event into a racketeering pattern.  <u>Raines v. State</u>, 219 Ga. App. 893, 894 (1996) (sale of timber was a single act and could not be converted into the predicate acts by separately charging sale and the filing of the deed for the land sold).

In his Response, Rosen argues that Protective committed at least two separate acts of theft which he contends are predicate acts to support a RICO

---

[15]  In light of the Act's clear intent, this Court has previously noted, "RICO . . . claims are increasingly being asserted in cases that fundamentally concern commercial disputes.  This litigation strategy is seldom successful, and often unnecessarily increases the cost of litigation and the burden on the parties and the court."  <u>Infection Disease Solutions, PC, v. Synamed</u>, 2007 WL 2454093, at *1 n.1 (Aug. 23, 2007).

claim.[16]  Rosen alleges that Protective engaged in a theft of Rosen's "chose of

action."  (See Resp. at 11.)  In his Response, Rosen appears to refine this theft

allegation by contending that American Guarantee and Zurich enlisted Protective

as an accomplice to help steal Rosen's ability to pursue the Bad Faith Action by

convincing him to enter a settlement under false pretenses.[17]  Rosen contends:

> "American Guarantee and Zurich obtained Mr. Rosen's releases of his
> causes of action against American Guarantee by falsely promising not
> to use the release and the terms of the settlement to his detriment.
> Compl. ¶ 96.  They enlisted Protective to terminate Mr. Rosen as an
> agent, in order to render him unqualified to participate in the
> Protective E&O Program."

(Resp. at 11.)  Rosen does not cite any allegation in the Amended Complaint to

support this allegation against Protective.

Accomplice liability, as Rosen purports to now allege,[18] requires Rosen to

allege criminal intent on the part of Protective.  King v. State, 277 Ga. App. 190,

194 (2006).  "Mere presence at the scene or approval of the criminal act is not

---

[16]  In the Amended Complaint, Rosen alleges that "Defendants" committed several
acts of mail fraud which also constitute predicate acts.  Rosen does not assert that
Protective committed any acts of mail fraud in his Response. These allegations are
therefore deemed abandoned as to Protective.

[17]  This change in claim emphasis is interesting considering Rose has dismissed his
claim that Protective fraudulently induced him to enter into the Settlement
Agreement.

[18]  It bears noting that Rosen never refers to Protective as an accomplice or an aider
or abettor in the Amended Complaint.  The Court is left with the distinct
impression that Rosen is cobbling together whatever allegations he can find in the
Amended Complaint to salvage his claim against Protective.

sufficient.  Instead, proof that the defendant shared a common criminal intent with the actual perpetrators is necessary, and may be inferred from the defendant's conduct before, during, or after the crime."  <u>Taylor v. State</u>, 296 Ga. App. 212, 214 (2009) (internal quotations omitted).  To meet this intent requirement, Rosen thus must allege that Protective shared an intent to steal Rosen's chose of action.  The Amended Complaint, however, alleges that Protective was unaware a settlement had been reached and Protective was unaware of the provisions of the Settlement Agreement.  In the Amended Complaint, Rosen specifically contends: "[a]t the time it entered into the Settlement Agreement, neither American Guarantee nor Zurich informed Protective or ISSI that they should not utilize the existence of the Griffin or Bad Faith claim to Mr. Rosen's detriment."  (Am. Compl. ¶ 123.)  Rosen does not claim that Protective even knew about this "no detriment to Rosen" provision in the Settlement Agreement, and thus Protective could not have intended to aid American Guarantee and Zurich in stealing Rosen's "chose of action."

Rosen's fall back claim is that Protective aided and abetted the other Defendants in the theft of Rosen's premium payments for the renewed Policy.  Rosen argues: "Protective thus helped the other Defendants sell Mr. Rosen a worthless insurance policy, stealing his premium."  (Resp. at 12.)  The allegations

of the Amended Complaint again contradict this new litigating position.  The

Amended Complaint states that Protective terminated Rosen only after being

threatened and coerced by Zurich.  (Am. Compl. ¶¶ 111, 115-16, 259-63.)  The

Amended Complaint does not allege that Protective had any role or any knowledge

that ISSI planned or intended to send a renewal invoice to Rosen.  (See Id. at

¶ 310.)[19]  The Amended Complaint also fails to offer a possible motive for

Protective to participate in this scheme perceived by Rosen.  The Amended

Complaint implies that Protective somehow benefited by being listed as an

additional insured under the Policy.  (Id. at ¶¶ 291, 395.)  If, however, the Policy

was void as to Rosen, it was also void as to Protective.  That Rosen alleges that it

was Protective who helped Rosen recover the Premium, further discredits that

Rosen adequately has alleged that Protective was part of a criminal plot to steal

from Rosen.  (Id. at ¶ 204.)  Rosen simply has not alleged facts sufficient to state a

plausible claim for "theft" on its face.[20]  Twombly, 127 S. Ct. at 1974; Iqbal, 129

S. Ct. at 1949.[21]

---

[19]  To the extent that Rosen contends that Protective played any role in this
purported mail fraud, he has failed to plead these facts in accordance with Rule
9(b).

[20]  And even if this claim were found to be plausible, Rosen would have alleged, at
most, that Protective committed only one predicate act which is insufficient to state
a RICO claim.  Purvis v. State, 208 Ga. App. 653, 655 (1993) ("The evidence is
sufficient only to sustain the jury's finding that defendant committed this one

Rosen apparently also contends that Protective might have served as an accomplice to the alleged theft of Rosen's "chose of action" because he effectively served as an "accessory after the fact." The Response states that "Protective obstructed Mr. Rosen's efforts to learn what had really happened by giving a false explanation for his termination as a Protective agent and refusing to provide Mr. Rosen a copy of the Policy." (Resp. at 12.) An accessory after the fact cannot be an accomplice to the crime. See Schmid v. State, 77 Ga. App. 623, 632 (1948). In Purvis v. State, the Court of Appeals overturned a school superintendent's conviction under Georgia RICO for predicate acts, including theft, because the superintendent was not aware of the crime until after it had been committed. 208 Ga. App. 653, 654 (1993). The Court noted, "[a]t common law and under modern practice, an accessory after the fact is not considered an accomplice to the underlying crime itself." Id. at 654. Rosen has failed to demonstrate that Protective committed any predicate acts to support a RICO claim and Rosen's RICO claim against Protective is necessarily dismissed.

---

predicate act alleged in the indictment. To be guilty of a 'pattern of racketeering activity' pursuant to OCGA § 16-14-4(b), however, a defendant must have engaged in 'at least two incidents of racketeering activity....' OCGA § 16-14-3(8).");

[21] The tenor of the allegations is that Protective was the victim of a threat from Zurich, not a willing enterprise participant.

D.      Count V: Conspiracy to Commit RICO

It is unlawful to conspire or endeavor to conspire to violate the substantive

provisions of the Georgia RICO Act.  O.C.G.A. § 16-14-4(c).  A defendant may be

found liable for violating § 16-14-4(c) if he knowingly and willfully joins a

conspiracy which itself contains a common plan or purpose to commit two or more

predicate acts.  Southern Intermodal Logistics, Inc. v. D.J. Powers Co., Inc., 10

F.Supp.2d 1337, 1360-61 (S.D. Ga. 1998) (examining 16-14-4 using federal RICO

case law).[22]  A defendant therefore need not overtly commit any predicate acts, so

long as he knowingly and willfully joins a conspiratorial scheme which

contemplates that a co-conspirator will do so.  Salinas v. U.S., 522 U.S. 52, 64

(1997) (indeed, an individual "may be liable for conspiracy even though he was

incapable of committing the substantive offense").

The conspiratorial scheme alleged by Rosen involved theft and mail fraud.

The particularity requirement for fraud claims under Rule 9(b) of the Federal Rules

of Civil Procedure also applies to fraud-based state RICO claims, such as this one,

brought in a federal court.  See Am. United Life Ins. Co. v. Martinez, 480 F.3d

---

[22]  Because the Georgia RICO Act is modeled upon the federal RICO statute, in the
absence of Georgia authority, Georgia courts often look to federal decisions for
guidance on the interpretation of similar provisions of the Georgia Rico Act.
Williams General Corp. v. Stone, 279 Ga. 428, 430 (2005).

1043, 1064 (11th Cir. 2007); <u>Durham v. Bus. Mgmt. Assoc.</u>, 847 F.2d 1505, 1511-12 (11th Cir. 1988).

Rosen is required to adequately allege that Protective knowingly and willfully joined a conspiracy to commit two or more predicate offenses in furtherance of the alleged RICO scheme.  <u>See</u> <u>Cox v. Administrator U.S. Steel & Carnegie</u>, 17 F.3d 1386, 1410 (11th Cir. 1994) (finding that liability for federal RICO conspiracy requires knowledge of and voluntary participation in an agreement to do an illegal act).  Rosen argues that he has satisfied this pleading requirement by alleging that Protective assisted the other Defendants to commit mail fraud and theft, and took steps to conceal these alleged RICO violations. (Resp. at 19.)  Rosen's allegations are insufficient to allege that Protective knowingly and willfully joined a conspiracy which intended to commit these two predicate acts in furtherance of a common, unlawful scheme.  As shown above, Protective could not have knowingly and willfully conspired to steal Rosen's chose of action because it was not even aware of the terms of the Settlement Agreement. (Am. Compl. ¶ 123.)  Rosen has also failed to allege particular facts which demonstrate that Protective knowingly and willfully conspired with ISSI, Zurich and American Guarantee to commit mail fraud in order to steal from Rosen.  Rosen simply fails to allege sufficient facts that Protective conspired to engage in conduct

prohibited by Georgia's RICO statute.   (See id. at 330-341.)[23]  Rosen's cause of

action against Protective for conspiracy to commit RICO violations is dismissed.

     E.     Count VI and VII: Negligence and Negligence Per Se

     To state a claim for negligence, Rosen is required to show (1) a duty of care,

(2) a breach of this duty, (3) a legally attributable causal connection between the

conduct and the resulting injury, and (4) damages flowing from that breach.

Tucker v. Fed. Sav. & Loan Ass'n v. Balogh, 228 Ga. App. 482, 483 (1997).

Rosen alleges that Protective breached a duty of care owed to Rosen when it (1)

failed to provide him timely notice of his termination as a Protective agent, and (2)

failed to update its agent roster list.  (Am. Compl. ¶ 353(a) and (c).)  Protective

argues that these are only duties arising from contract and cannot support a tort

claim.  (Mot. to Dismiss at 22-24.)  Protective further argues that Rosen's claims

are barred by the economic loss rule.  (Id.)

---

[23]  The Court disagrees that Protective's alleged efforts to "conceal" this mail fraud and theft as an accessory after the fact demonstrate a knowing and willful agreement.  (See Resp. at 19 (citing Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1411 (11th Cir. 1994) ("evidence that a defendant assisted in the concealment of a conspiracy may support an inference that the defendant joined in it while it was still in operation")).  To the extent that Protective's participation was limited only to concealment, this is insufficient to state a valid claim.  "There can be no conspiracies under our law between the perpetrators of a major offense and an accessory after the fact."  Purvis, 208 Ga. App. at 655.

### 1.     Rosen's Contention That Protective Was Negligent By Failing To Update The Agent's List

"It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of [the] contract to avoid harming him."  Orkin Exterminating Co. v. Stevens, 130 Ga. App. 363, 363 (1973).  Such duties "'may arise from statute, or flow from relations created by contract, express or implied.  The violation of any such specific duty, accompanied with damages, gives a right of action.'"  Mauldin v. Shaffer, 113 Ga. App. 874, 878 (1966).  "[I]n order to maintain an action *ex delicto* because of a breach of duty growing out of a contractual relation the breach must be shown to have been a breach of a duty imposed by law and not merely the breach of a duty imposed by the contract itself.'"  Id. at 879-89.

Where a party's claim arises only from a duty owed in contract and the party only alleges economic damages the "economic loss rule" applies.  See Massih v. Jim Moran & Assoc., Inc., 542 F. Supp. 2d 1324, 1331 (M.D. Ga. 2008).  "The economic loss rule generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort.  Under the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property . . . ."  General

Electric Co. v. Lowe's Home Ctrs., Inc., 279 Ga. 77, 78 (2005); see also

Davencourt at Pilgrims Landing Homeowners Ass'n, 221 P.3d 234, 244 (Utah S.

Ct. 2009) ("Where the economic loss rule is at issue, the initial inquiry becomes

whether a duty exists independent of any contractual obligations between the

parties.  If we find that an independent duty exists under the law, the economic loss

rule does not bar a tort claim because the claim is based on a recognized

independent duty of care and thus does not fall within the scope of the rule."

(internal citations and punctuation omitted)).

Protective contends that Rosen's claim that Protective was negligent when it

failed to provide an updated list of its agents to Zurich or ISSI as required by the

Policy should be dismissed because the claim is based on a contract and is not a

tort based on the breach of an independent duty.  (Am. Compl. ¶ 353(c).)  Rosen

contends that, "the crux of Plaintiff's argument here is not merely that Protective

breached its obligations under the Policy, but that the actions taken by Protective

were taken in such [sic] that they violated a duty of care owed Mr. Rosen by

Protective."  (Resp. 23-24; citing Waldrip v. Voyles, 101 Ga. App. 592 (1991) and

E&M Constr. Co. v. Bob, 115 Ga. App. 127 (1967).)  In the cases upon which

Rosen relies, the plaintiff identified an independent legal duty of care to establish a

negligence claim.  In Waldrip, the duty was based on a statute.  Waldrip, 201 Ga.

App. at 594 (the "requirement that the creditor honor the debtor's allocation of payments on multiple obligations arises from O.C.G.A. § 13-4-42, not from a contract provision, it follows that this duty of a creditor is a duty imposed by law and not merely . . . a duty imposed by the contract itself." (internal quotations omitted)).  In E&M Construction Co., the court noted the common law duty of a contractor not to damage the property of another.  E&M Constr. Co., 115 Ga. App. at 128 ("Independently of any duty under a contract, the law imposes upon a contractor the duty not to negligently and wrongfully injure and damage the property of another.")  Rosen has failed to identify any independent duty Protective owed to Rosen to provide ISSI or Zurich a list of agents.  To the contrary, Rosen alleges the obligation to provide notice was imposed by the Policy.  (Am. Compl. ¶ 353(c).)  This was a purely contractual obligation.  Since Rosen's claim is based on a duty arising only from contract and he is asking only for economic damages, he has no independent tort claim and the economic loss rule applies.

Rosen argues that this claim is still viable because it falls under the "misrepresentation exception" to the economic loss rule.  (Resp. at 24-25.)  This exception provides:

> [O]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the

> maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

City of Cairo v. Hightower Consulting Eng'rs, Inc., 278 Ga. App. 721, 729 (2006).

Rosen contends that "Protective . . . misrepresented to Mr. Rosen that he was eligible to renew enrollment in the Protective E&O Program by including him on the roster of its agents."  (Resp. at 25.)[24]  This is not alleged in the Amended Complaint.  The Amended Complaint fails also to allege that Rosen was aware of the roster.  The Amended Complaint fails to allege that Protective "misrepresented" to Rosen that he was eligible to renew in the Program because he was included on the roster.  The Amended Complaint fails to allege that Rosen relied on the information in the roster.  To the extent that Rosen now argues that this constitutes a negligent misrepresentation, he must show direct, not *indirect*, reliance on this information.  See White v. BDO Seidman, LLP, 249 Ga. App. 668, 671 (2001).

---

[24]  Rosen also contends that Protective misrepresented the reason for Rosen's termination as an agent and gave false dates for the date of Rosen's termination. (Resp. at 25).  Neither of these alleged misrepresentations relate to the specific claim of negligence asserted by Rosen and are therefore not relevant to the Court's consideration of this claim.

2.      *Rosen's Contention That Protective's Alleged Retroactive
Termination Constitutes Negligence and Negligence Per Se*

Negligence per se arises when a statute or ordinance is violated.  <u>Central</u>

<u>Anesthesia Assoc. v. Worthy</u>, 173 Ga.App. 150, 152-153 (1984), aff'd 254 Ga. 728

(1985).  The violation of certain mandatory regulations may also amount to

negligence per se if the regulations impose a legal duty.  <u>See</u> <u>Dupree v. Keller</u>

<u>Indus.</u>, 199 Ga.App. 138, 141(1), 404 S.E.2d 291 (1991).  O.C.G.A. § 51-1-6

provides: "When the law requires a person to perform an act for the benefit of

another or to refrain from doing an act which may injure another, although no

cause of action is given in express terms, the injured party may recover for the

breach of such legal duty if he suffers damage thereby."  Assuming that a violation

of a statute or mandatory regulation has occurred, before negligence per se can be

determined, a trial court must consider "(1) whether the injured person falls within

the class of persons it was intended to protect and (2) whether the harm

complained of was the harm [the statute] was intended to guard against."  <u>Central</u>

<u>Anesthesia Assoc.</u>, 173 Ga.App. at 153 (citations and punctuation omitted.).  If the

court finds negligence per se, the plaintiffs must then demonstrate a causal

connection between the negligence per se and the injury.  <u>Duncan v. Randolph</u>,

236 Ga.App. 566, 567 (1999).  "And it is generally a jury question as to whether or

not such negligence proximately caused the injury."  <u>Id.</u>

Rosen contends that Protective's actions violated O.C.G.A. § 33-23-44(b) and therefore constitute negligence and negligence per se.  O.C.G.A. § 33-24-44 applies to the "cancellation of a policy . . . by the insurer or its agent duly authorized by the insurer to effect such cancellation."  O.C.G.A. § 33-24-44(a). Subsection (b) provides, in part, that "[w]ritten notice stating the time when the cancellation will be effective, which shall not be less than 30 days from the date of mailing or delivery in person of such notice of cancellation or such other specific longer period as may be provided in the contract or by statute, shall be delivered in person or by deposit in the Unites States mails . . . ."  Id.

Rosen contends that "Protective knew that terminating Mr. Rosen would have the immediate effect of terminating his insurance policy under the Program. Protective did not give notice to Mr. Rosen about his termination as an agent until *after* the termination – in direct violation of Georgia Law."  (Resp. at 24.)  The Court disagrees.

O.C.G.A. § 33-24-44 governs the cancellation of insurance policies.  It does not govern the termination of insurance agents which may have the ancillary effect of terminating an insurance policy.  The Court cannot reasonably conclude that "the harm complained of was the harm [the statute] was intended to guard against." Central Anesthesia Assoc., 173 Ga. App. at 153.  Rosen has not alleged a viable

negligence per se claim and the negligence claims against Protective are required to be dismissed.

      F.    <u>Counts IX and X: Request for Attorneys Fees and Punitive Damages</u>

Because Rosen has failed to allege a claim upon which attorneys' fees or punitive damages can be awarded. Rosen's attorneys' fees and punitive damages claims are required to be dismissed. <u>Dowdell v. Krystal Co.</u>, 291 Ga. App. 469 473 (2008).[25]

## III.   MOTION TO DISQUALIFY

      A.    <u>Legal Standard</u>

Rosen seeks to disqualify Zurich and American Guarantee's counsel, Mr. Marsh and his firm, Swift Curie. Rosen claims that because Mr. Marsh was involved in the drafting of the Settlement Agreement, he necessarily is a witness

---

[25] In his Response, Rosen requested leave to amend the First Amended Complaint in the event the Court granted Protective's Motion to Dismiss. The Court declines to consider this request. This action was filed approximately six months ago. Rosen amended the Complaint once to make changes to a party's name. Rosen also substantively amended the Complaint in his Response to the Motion to Dismiss when he agreed to dismiss a number of claims against Protective. Rosen has had considerable opportunity to consider his claims in this action and the facts that he chose to allege to support these claims. The Court does not have any context for any amendment Rosen may want to propose to address the pleading deficiencies identified in this Opinion and Order. Thus the Court cannot and should not give Rosen the *carte blanche* amendment permission he requests because the Court does not know what specific amendments are contemplated and the Court cannot evaluate whether the potential amendments would be appropriate or timely.

and thus he and his firm are required to be disqualified from representing Zurich and American Guarantee in this action.

Motions to disqualify opposing counsel are disfavored.  <u>Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano</u>, 376 F. Supp. 2d 426, 428 (S.D.N.Y. 2005); <u>Concat LP v. Unilever, PLC</u>, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004) ("Because disqualification is a drastic measure, it is generally disfavored and should only be imposed when absolutely necessary."); <u>Jordan v. Philadelphia Hous. Auth.</u>, 337 F. Supp. 2d 666, 678 (E.D. Pa. 2004) ("Disqualification is a harsh measure, and therefore, motions to disqualify opposing counsel generally are not favored."  (internal quotations omitted)).  The rationale is that motions to disqualify are often tactically motivated, deprive a litigant of his right to freely choose his counsel, cause needless delay, and are otherwise disruptive to the litigation process.  <u>See, e. g.</u>, <u>Evans v. Artek Sys. Corp.</u>, 715 F.2d 788, 791 (2d Cir. 1983).  "The party bringing the motion to disqualify bears the burden of proving the grounds for disqualification."  <u>Herrmann v. GutterGuard, Inc.</u>, 199 F. App'x 745, 752 (11th Cir. 2006) (per curiam).

The Local Rules of the United States District Court for the Northern District of Georgia require attorneys appearing before it to comply with the court's specific rules of practice, the Code of Professional Responsibility and Standards of

Conduct contained in the State Bar of Georgia's Rules and Regulations, and judicial decisions interpreting these rules and standards.  L.R. 83.1(C), NDGa.; Bayshore Ford Truck Sales, Inc. v. Ford Motor Co., 380 F.3d 1331, 1338 (11th Cir.2004).  Rosen argues that disqualification of Mr. Marsh and his law firm is appropriate here pursuant to Georgia Rule of Professional Conduct 3.7 ("Rule 3.7") and 1.7.  Rule 3.7 states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7[26] or Rule 1.9.

B.    Rosen Has Not Demonstrated That Mr. Marsh Is A Necessary Witness

Rosen alleges that disqualification of Mr. Marsh is appropriate under Rule 3.7 because Mr. Marsh's involvement in the negotiation of the Settlement

---

[26]  Rosen cites Rule 1.7 for the general proposition that when trial counsel is a material witness to a matter, withdrawal is also required for the trial counsel's firm. Defendants do not dispute this contention.

Agreement makes him a necessary witness.  Rosen points to Paragraphs 87 through 92 of the Amended Complaint to support his claim that Mr. Marsh is a necessary witness.  Rosen alleges that Mr. Marsh prepared the initial draft of the Settlement Agreement.  (Am. Compl. ¶ 87).  He alleges that Rosen's attorney, Mr. Bahr provided a revised draft of the Settlement Agreement to Mr. Marsh and "made it clear that American Guarantee and Zurich could not use the bad faith action, including the events that gave rise to the bad faith action, to Rosen's detriment." (Id. at ¶ 88.)  He alleges that Mr. Marsh provided a copy of the revised Settlement Agreement to Zurich and American Guarantee and informed them that as consideration of the settlement, Zurich and American Guarantee could not use the bad faith action against Rosen.  (Id. at ¶¶ 90-91.)  Finally, he alleges that Zurich and American Guarantee understood these representations.  (Id. at ¶ 92.)  Rosen argues that Mr. Marsh's testimony is necessary to determine what Mr. Marsh told American and Zurich and to determine what Zurich and American Guarantee understood when they were signing the Settlement Agreement.  (Mot. to Disqualify, p. 10.)  Rosen argues that Mr. Marsh's necessity is best evidenced by Zurich and American Guarantee's Verified Answer, which states that they lack information to admit or deny Paragraphs 87 through 92 of the Amended Complaint, and Zurich and American Guarantee's Initial Disclosures which

identify Kevin Bahr, Rosen's Counsel during the settlement negotiations, as a

material witness.[27]

Zurich and American Guarantee contend that disqualification is not required

because Mr. Marsh is not a "necessary" witness as required by Rule 3.7.  They

argue that any information Mr. Marsh may possess is equally available through

other sources.  Zurich and American Guarantee also argue that the information

sought by Rosen is largely protected by the attorney-client privilege or made

irrelevant by the Settlement Agreement's merger clause.

Rule 3.7 requires disqualification of an attorney if an attorney is a necessary

witness to an action.  A lawyer is a "necessary" witness under Rule 3.7 if his or her

testimony is material and unobtainable elsewhere.  Clough v. Richelo, 274 Ga.

App. 129, 133 (2005) (citing World Youth Day v. Famous Artists Merchandising

Exchange, 866 F. Supp. 1297, 1301-02 (D. Colo. 1994)).  "The party moving for

disqualification of a lawyer under Rule 3.7 has the burden of showing that the

---

[27]  Rosen requests leave to file a Sur-Reply which contends that Zurich and
American Guarantee Initial Disclosures contain admissions that require
disqualification.  These "admissions" are Zurich and American Guarantee's listing
of Kevin Bahr and Tim Vieth as individuals with knowledge in this action.  Rosen
contends that Bahr's and Vieth's "scope and knowledge . . . is **<u>identical</u>** to the
subject matter for which Plaintiff seeks to depose Mr. Marsh and obviously the
Zurich Defendants believe this testimony is relevant."  (Sur-Reply at p. 2
(emphasis in original).)  Rosen's Motion for leave to file a Sur-Reply is
**GRANTED** and the Court considers Rosen's argument below.

lawyer 'is likely to be a necessary witness' by demonstrating that the lawyer's testimony is relevant to dispute, material questions of fact *and that there is no other evidence available to prove those fact*.  Id. at 132 (emphasis added) (citing Martinez v. Housing Auth. of DeKalb County, 264 Ga. App. 282, 288 (2003); Chapman Engineers v. Natural Gas Sales Co., 766 F. Supp. 949, 957-58 (D. Kan. 1991) (in determining whether a lawyer's testimony is necessary, a court should consider, *inter alia*, what issues the testimony will address and whether other evidence is available to prove the same point, because disqualification is not required if the lawyer's testimony will be merely cumulative of other evidence).

Mr. Marsh is not a necessary witness who should be disqualified pursuant to Rule 3.7 because the information that Rosen seeks to obtain from Mr. Marsh appears to be available from other sources.  Rosen seeks to obtain Mr. Marsh's testimony on two principal issues: (1) what did Mr. Bahr communicate to Mr. Marsh when he provided the revised Settlement Agreement; and (2) what did Mr. Marsh advise his clients and what did they understand when they agreed to the Settlement Agreement.  Neither issue requires Mr. Marsh's direct testimony.

Mr. Bahr will be able to testify regarding the first issue.[28]  The Court rejects Rosen's contention in his Sur-Reply that Zurich and American Guarantee's identification of Mr. Bahr as a witness in their Initial Disclosures requires the disqualification of Mr. Marsh.  To the contrary, it demonstrates that there are other individuals from whom Rosen may obtain this relevant information.  Mr. Marsh is therefore not a "necessary" witness regarding this first issue.

Representatives from Zurich and American Guarantee will be able to testify regarding the second issue.[29]  Their knowledge and testimony is more valuable than Mr. Marsh's since it is Zurich and American Guarantee's knowledge and understanding that is at issue in this litigation.[30]  Disqualification of Mr. Marsh and

---

[28]  In arguing for disqualification, Rosen fails to acknowledge that Mr. Bahr, Rosen's former counsel, will likely be the only individual who may testify regarding these communications.  It is Zurich and American Guarantee, and not Rosen, who are likely to be prejudiced as a result of their decision to retain Mr. Marsh.

[29]  The Court's ruling on this issue is limited to whether Mr. Marsh is a necessary witness.  This Order does not consider whether these communications are subject to the attorney-client privilege or whether the Settlement Agreement's merger clause bars any of Rosen's claims.

[30]  The Court acknowledges that Zurich and American Guarantee's Verified Answers cast doubt on whether they have knowledge regarding this second issue.  The Court believes that when discovery is taken, Zurich and American Guarantee will likely provide relevant information regarding this subject that does not require Mr. Marsh's testimony.  If Zurich and American Guarantee maintain their position that they have no knowledge regarding their understanding of the Settlement Agreement, the Court would consider allowing Rosen to re-file his Motion to Disqualify Mr. Marsh and his firm.

his firm is therefore improper since he cannot be considered a "necessary" witness under Rule 3.7.  Rosen's Motion to Disqualify is denied.[31]

## IV.   MOTION TO STAY DISCOVERY AND MOTION FOR PROTECTIVE ORDER

Protective has also moved to stay discovery and for a protective order until its Motion to Dismiss is decided.  The Court finds that these Motions are moot based upon its ruling in this Opinion and Order.

## V.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Protective's Motion to Dismiss [18] is **GRANTED**.

**IT IS FURTHER ORDERED** that Rosen's Motion to File Sur-Reply [36] is **GRANTED**.

**IT IS FURTHER ORDERED** that Rosen's Motion to Disqualify [12] is **DENIED.**

---

[31]   Should Rosen contend that facts have changed in such a way that Mr. Marsh becomes a necessary witness, he may renew his motion for the Court's consideration.

**IT IS FURTHER ORDERED** that Protective's Motion to Stay Discovery [34]; and Protective's Motion for Protective Order [56] are **DENIED AS MOOT**.

**SO ORDERED** this 20th day of May, 2010.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE